IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Eiser Infrastructure Limited and Energia Solar
Luxembourg S.A.R.L.,

        *Petitioners*,

    v.

Kingdom of Spain,

        *Respondent*.

Civil Action No. _____

**Petition to Enforce Arbitral Award**

# EXHIBIT 2

## No. 8359

———

## AFGHANISTAN, AUSTRIA, BELGIUM, CAMEROON, CENTRAL AFRICAN REPUBLIC, etc.

**Convention on the settlement of investment disputes between States and nationals of other States. Opened for signature at Washington, on 18 March 1965**

*Official texts : English, French and Spanish.*

*Registered by the International Bank for Reconstruction and Development on 17 October 1966.*

————

## AFGHANISTAN, AUTRICHE, BELGIQUE, CAMEROUN, RÉPUBLIQUE CENTRAFRICAINE, etc.

**Convention pour le règlement des différends relatifs aux investissements entre États et ressortissants d'autres États. Ouverte à la signature à Washington, le 18 mars 1965**

*Textes officiels anglais, français et espagnol.*

*Enregistrée par la Banque internationale pour la reconstruction et le développement le 17 octobre 1966.*

No. 8359. CONVENTION [1] ON THE SETTLEMENT OF IN-VESTMENT DISPUTES BETWEEN STATES AND NATIONALS OF OTHER STATES. OPENED FOR SIGNATURE AT WASHINGTON, ON 18 MARCH 1965

PREAMBLE

The Contracting States

Considering the need for international cooperation for economic development, and the role of private international investment therein ;

Bearing in mind the possibility that from time to time disputes may arise in connection with such investment between Contracting States and nationals of other Contracting States ;

Recognizing that while such disputes would usually be subject to national legal processes, international methods of settlement may be appropriate in certain cases ;

Attaching particular importance to the availability of facilities for international conciliation or arbitration to which Contracting States and nationals of other Contracting States may submit such disputes if they so desire ;

Desiring to establish such facilities under the auspices of the International Bank for Reconstruction and Development ;

---

[1] In accordance with article 68 (2), the Convention came into force on 14 October 1966, thirty days after the date of deposit of the twentieth instrument of ratification, in respect of the following States on behalf of which the instruments of ratification were deposited with the International Bank for Reconstruction and Development on the dates indicated :

| State | Date of deposit | State | Date of deposit |
|---|---|---|---|
| Nigeria | 23 August 1965 | Iceland | 25 July 1966 |
| Mauritania | 11 January 1966 | Sierra Leone | 2 August 1966 |
| Ivory Coast | 16 February 1966 | Malaysia | 8 August 1966 |
| Central African Republic | 23 February 1966 | Malawi | 23 August 1966 |
| Gabon | 4 April 1966 | Chad | 29 August 1966 |
| Uganda | 7 June 1966 | Upper Volta | 29 August 1966 |
| United States of America | 10 June 1966 | Malagasy Republic | 6 September 1966 |
| Tunisia | 22 June 1966 | Dahomey | 6 September 1966 |
| Congo (Brazzaville) | 23 June 1966 | Jamaica | 9 September 1966 |
| Ghana | 13 July 1966 | Netherlands (for the Kingdom in Europe) | 14 September 1966 |

The Convention came into force for Pakistan on 15 October 1966, thirty days after the deposit, on 15 September 1966, of its instrument of ratification.

Recognizing that mutual consent by the parties to submit such disputes to conciliation or to arbitration through such facilities constitutes a binding agreement which requires in particular that due consideration be given to any recommendation of conciliators, and that any arbitral award be complied with ; and

Declaring that no Contracting State shall by the mere fact of its ratification, acceptance or approval of this Convention and without its consent be deemed to be under any obligation to submit any particular dispute to conciliation or arbitration,

Have agreed as follows :

CHAPTER I

## INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

Section 1

ESTABLISHMENT AND ORGANIZATION

*Article 1*

(1) There is hereby established the International Centre for Settlement of Investment Disputes (hereinafter called the Centre).

(2) The purpose of the Centre shall be to provide facilities for conciliation and arbitration of investment disputes between Contracting States and nationals of other Contracting States in accordance with the provisions of this Convention.

*Article 2*

The seat of the Centre shall be at the principal office of the International Bank for Reconstruction and Development (hereinafter called the Bank). The seat may be moved to another place by decision of the Administrative Council adopted by a majority of two-thirds of its members.

*Article 3*

The Centre shall have an Administrative Council and a Secretariat and shall maintain a Panel of Conciliators and a Panel of Arbitrators.

## Section 2

### THE ADMINISTRATIVE COUNCIL

#### *Article 4*

(1) The Administrative Council shall be composed of one representative of each Contracting State. An alternate may act as representative in case of his principal's absence from a meeting or inability to act.

(2) In the absence of a contrary designation, each governor and alternate governor of the Bank appointed by a Contracting State shall be *ex officio* its representative and its alternate respectively.

#### *Article 5*

The President of the Bank shall be *ex officio* Chairman of the Administrative Council (hereinafter called the Chairman) but shall have no vote. During his absence or inability to act and during any vacancy in the office of President of the Bank, the person for the time being acting as President shall act as Chairman of the Administrative Council.

#### *Article 6*

(1) Without prejudice to the powers and functions vested in it by other provisions of this Convention, the Administrative Council shall

(a) adopt the administrative and financial regulations of the Centre ;

(b) adopt the rules of procedure for the institution of conciliation and arbitration proceedings ;

(c) adopt the rules of procedure for conciliation and arbitration proceedings (hereinafter called the Conciliation Rules and the Arbitration Rules) ;

(d) approve arrangements with the Bank for the use of the Bank's administrative facilities and services ;

(e) determine the conditions of service of the Secretary-General and of any Deputy Secretary-General ;

(f) adopt the annual budget of revenues and expenditures of the Centre ;

(g) approve the annual report on the operation of the Centre.

The decisions referred to in sub-paragraphs (a), (b), (c) and (f) above shall be adopted by a majority of two-thirds of the members of the Administrative Council.

(2) The Administrative Council may appoint such committees as it considers necessary.

(3) The Administrative Council shall also exercise such other powers and perform such other functions as it shall determine to be necessary for the implementation of the provisions of this Convention.

## *Article 7*

(1) The Administrative Council shall hold an annual meeting and such other meetings as may be determined by the Council, or convened by the Chairman, or convened by the Secretary-General at the request of not less than five members of the Council.

(2) Each member of the Administrative Council shall have one vote and, except as otherwise herein provided, all matters before the Council shall be decided by a majority of the votes cast.

(3) A quorum for any meeting of the Administrative Council shall be a majority of its members.

(4) The Administrative Council may establish, by a majority of two-thirds of its members, a procedure whereby the Chairman may seek a vote of the Council without convening a meeting of the Council. The vote shall be considered valid only if the majority of the members of the Council cast their votes within the time limit fixed by the said procedure.

## *Article 8*

Members of the Administrative Council and the Chairman shall serve without remuneration from the Centre.

## Section 3

## THE SECRETARIAT

## *Article 9*

The Secretariat shall consist of a Secretary-General, one or more Deputy Secretaries-General and staff.

## *Article 10*

(1) The Secretary-General and any Deputy Secretary-General shall be elected by the Administrative Council by a majority of two-thirds of its members upon the nomination of the Chairman for a term of service not exceeding six years and shall be eligible for re-election. After consulting the members of the Administrative Council, the Chairman shall propose one or more candidates for each such office.

(2) The offices of Secretary-General and Deputy Secretary-General shall be incompatible with the exercise of any political function. Neither the Secretary-General nor any Deputy Secretary-General may hold any other employment or engage in any other occupation except with the approval of the Administrative Council.

(3) During the Secretary-General's absence or inability to act, and during any vacancy of the office of Secretary-General, the Deputy Secretary-General shall act as Secretary-General. If there shall be more than one Deputy Secretary-General, the Administrative Council shall determine in advance the order in which they shall act as Secretary-General.

### *Article 11*

The Secretary-General shall be the legal representative and the principal officer of the Centre and shall be responsible for its administration, including the appointment of staff, in accordance with the provisions of this Convention and the rules adopted by the Administrative Council. He shall perform the function of registrar and shall have the power to authenticate arbitral awards rendered pursuant to this Convention, and to certify copies thereof.

### Section 4

### THE PANELS

### *Article 12*

The Panel of Conciliators and the Panel of Arbitrators shall each consist of qualified persons, designated as hereinafter provided, who are willing to serve thereon.

### *Article 13*

(1) Each Contracting State may designate to each Panel four persons who may but need not be its nationals.

(2) The Chairman may designate ten persons to each Panel. The persons so designated to a Panel shall each have a different nationality.

### *Article 14*

(1) Persons designated to serve on the Panels shall be persons of high moral character and recognized competence in the fields of law, commerce, industry or finance, who may be relied upon to exercise independent judgment. Competence in the field of law shall be of particular importance in the case of persons on the Panel of Arbitrators.

(2) The Chairman, in designating persons to serve on the Panels, shall in addition pay due regard to the importance of assuring representation on the Panels of the principal legal systems of the world and of the main forms of economic activity.

### *Article 15*

(1) Panel members shall serve for renewable periods of six years.

(2) In case of death or resignation of a member of a Panel, the authority which designated the member shall have the right to designate another person to serve for the remainder of that member's term.

(3) Panel members shall continue in office until their successors have been designated.

### *Article 16*

(1) A person may serve on both Panels.

(2) If a person shall have been designated to serve on the same Panel by more than one Contracting State, or by one or more Contracting States and the Chairman, he shall be deemed to have been designated by the authority which first designated him or, if one such authority is the State of which he is a national, by that State.

(3) All designations shall be notified to the Secretary-General and shall take effect from the date on which the notification is received.

### Section 5

### FINANCING THE CENTRE

### *Article 17*

If the expenditure of the Centre cannot be met out of charges for the use of its facilities, or out of other receipts, the excess shall be borne by Contracting States which are members of the Bank in proportion to their respective subscriptions to the capital stock of the Bank, and by Contracting States which are not members of the Bank in accordance with rules adopted by the Administrative Council.

### Section 6

### STATUS, IMMUNITIES AND PRIVILEGES

### *Article 18*

The Centre shall have full international legal personality. The legal capacity of the Centre shall include the capacity

(*a*) to contract ;

(*b*) to acquire and dispose of movable and immovable property ;

(*c*) to institute legal proceedings.

### Article 19

To enable the Centre to fulfil its functions, it shall enjoy in the territories of each Contracting State the immunities and privileges set forth in this Section.

### Article 20

The Centre, its property and assets shall enjoy immunity from all legal process, except when the Centre waives this immunity.

### Article 21

The Chairman, the members of the Administrative Council, persons acting as conciliators or arbitrators or members of a Committee appointed pursuant to paragraph (3) of Article 52, and the officers and employees of the Secretariat

(*a*) shall enjoy immunity from legal process with respect to acts performed by them in the exercise of their functions, except when the Centre waives this immunity ;

(*b*) not being local nationals, shall enjoy the same immunities from immigration restrictions, alien registration requirements and national service obligations, the same facilities as regards exchange restrictions and the same treatment in respect of travelling facilities as are accorded by Contracting States to the representatives, officials and employees of comparable rank of other Contracting States.

### Article 22

The provisions of Article 21 shall apply to persons appearing in proceedings under this Convention as parties, agents, counsel, advocates, witnesses or experts ; provided, however, that sub-paragraph (*b*) thereof shall apply only in connection with their travel to and from, and their stay at, the place where the proceedings are held.

### Article 23

(1) The archives of the Centre shall be inviolable, wherever they may be.

(2) With regard to its official communications, the Centre shall be accorded by each Contracting State treatment not less favourable than that accorded to other international organizations.

### Article 24

(1) The Centre, its assets, property and income, and its operations and transactions authorized by this Convention shall be exempt from all taxation and customs duties. The Centre shall also be exempt from liability for the collection or payment of any taxes or customs duties.

(2) Except in the case of local nationals, no tax shall be levied on or in respect of expense allowances paid by the Centre to the Chairman or members of the Administrative Council, or on or in respect of salaries, expense allowances or other emoluments paid by the Centre to officials or employees of the Secretariat.

(3) No tax shall be levied on or in respect of fees or expense allowances received by persons acting as conciliators, or arbitrators, or members of a Committee appointed pursuant to paragraph (3) of Article 52, in proceedings under this Convention, if the sole jurisdictional basis for such tax is the location of the Centre or the place where such proceedings are conducted or the place where such fees or allowances are paid.

CHAPTER II

## JURISDICTION OF THE CENTRE

### Article 25

(1) The jurisdiction of the Centre shall extend to any legal dispute arising directly out of an investment, between a Contracting State (or any constituent subdivision or agency of a Contracting State designated to the Centre by that State) and a national of another Contracting State, which the parties to the dispute consent in writing to submit to the Centre. When the parties have given their consent, no party may withdraw its consent unilaterally.

(2) " National of another Contracting State " means :

(a) any natural person who had the nationality of a Contracting State other than the State party to the dispute on the date on which the parties consented to submit such dispute to conciliation or arbitration as well as on the date on which the request was registered pursuant to paragraph (3) of Article 28 or paragraph (3) of Article 36, but does not include any person who on either date also had the nationality of the Contracting State party to the dispute ; and

(b) any juridical person which had the nationality of a Contracting State other than the State party to the dispute on the date on which the parties consented to submit such dispute to conciliation or arbitration and any

juridical person which had the nationality of the Contracting State party to the dispute on that date and which, because of foreign control, the parties have agreed should be treated as a national of another Contracting State for the purposes of this Convention.

(3) Consent by a constituent subdivision or agency of a Contracting State shall require the approval of that State unless that State notifies the Centre that no such approval is required.

(4) Any Contracting State may, at the time of ratification, acceptance or approval of this Convention or at any time thereafter, notify the Centre of the class or classes of disputes which it would or would not consider submitting to the jurisdiction of the Centre. The Secretary-General shall forthwith transmit such notification to all Contracting States. Such notification shall not constitute the consent required by paragraph (1).

## *Article 26*

Consent of the parties to arbitration under this Convention shall, unless otherwise stated, be deemed consent to such arbitration to the exclusion of any other remedy. A Contracting State may require the exhaustion of local administrative or judicial remedies as a condition of its consent to arbitration under this Convention.

## *Article 27*

(1) No Contracting State shall give diplomatic protection, or bring an international claim, in respect of a dispute which one of its nationals and another Contracting State shall have consented to submit or shall have submitted to arbitration under this Convention, unless such other Contracting State shall have failed to abide by and comply with the award rendered in such dispute.

(2) Diplomatic protection, for the purposes of paragraph (1), shall not include informal diplomatic exchanges for the sole purpose of facilitating a settlement of the dispute.

CHAPTER III

## CONCILIATION

### Section 1

#### REQUEST FOR CONCILIATION

##### *Article 28*

(1) Any Contracting State or any national of a Contracting State wishing to institute conciliation proceedings shall address a request to that effect in writing to the Secretary-General who shall send a copy of the request to the other party.

(2) The request shall contain information concerning the issues in dispute, the identity of the parties and their consent to conciliation in accordance with the rules of procedure for the institution of conciliation and arbitration proceedings.

(3) The Secretary-General shall register the request unless he finds, on the basis of the information contained in the request, that the dispute is manifestly outside the jurisdiction of the Centre. He shall forthwith notify the parties of registration or refusal to register.

### Section 2

#### CONSTITUTION OF THE CONCILIATION COMMISSION

##### *Article 29*

(1) The Conciliation Commission (hereinafter called the Commission) shall be constituted as soon as possible after registration of a request pursuant to Article 28.

(2) (*a*) The Commission shall consist of a sole conciliator or any uneven number of conciliators appointed as the parties shall agree.

(*b*) Where the parties do not agree upon the number of conciliators and the method of their appointment, the Commission shall consist of three conciliators, one conciliator appointed by each party and the third, who shall be the president of the Commission, appointed by agreement of the parties.

##### *Article 30*

If the Commission shall not have been constituted within 90 days after notice of registration of the request has been dispatched by the Secretary-

General in accordance with paragraph (3) of Article 28, or such other period as the parties may agree, the Chairman shall, at the request of either party and after consulting both parties as far as possible, appoint the conciliator or conciliators not yet appointed.

### *Article 31*

(1) Conciliators may be appointed from outside the Panel of Conciliators, except in the case of appointments by the Chairman pursuant to Article 30.

(2) Conciliators appointed from outside the Panel of Conciliators shall possess the qualities stated in paragraph (1) of Article 14.

### Section 3

### CONCILIATION PROCEEDINGS

### *Article 32*

(1) The Commission shall be the judge of its own competence.

(2) Any objection by a party to the dispute that that dispute is not within the jurisdiction of the Centre, or for other reasons is not within the competence of the Commission, shall be considered by the Commission which shall determine whether to deal with it as a preliminary question or to join it to the merits of the dispute.

### *Article 33*

Any conciliation proceeding shall be conducted in accordance with the provisions of this Section and, except as the parties otherwise agree, in accordance with the Conciliation Rules in effect on the date on which the parties consented to conciliation. If any question of procedure arises which is not covered by this Section or the Conciliation Rules or any rules agreed by the parties, the Commission shall decide the question.

### *Article 34*

(1) It shall be the duty of the Commission to clarify the issues in dispute between the parties and to endeavour to bring about agreement between them upon mutually acceptable terms. To that end, the Commission may at any stage of the proceedings and from time to time recommend terms of settlement to the parties. The parties shall cooperate in good faith with the Commission in order to enable the Commission to carry out its functions, and shall give their most serious consideration to its recommendations.

Case 1:18-cv-01686-CKK   Document 1-2   Filed 07/19/18   Page 14 of 32

(2) If the parties reach agreement, the Commission shall draw up a report noting the issues in dispute and recording that the parties have reached agreement. If, at any stage of the proceedings, it appears to the Commission that there is no likelihood of agreement between the parties, it shall close the proceedings and shall draw up a report noting the submission of the dispute and recording the failure of the parties to reach agreement. If one party fails to appear or participate in the proceedings, the Commission shall close the proceedings and shall draw up a report noting that party's failure to appear or participate.

## *Article 35*

Except as the parties to the dispute shall otherwise agree, neither party to a conciliation proceeding shall be entitled in any other proceeding, whether before arbitrators or in a court of law or otherwise, to invoke or rely on any views expressed or statements or admissions or offers of settlement made by the other party in the conciliation proceedings, or the report or any recommendations made by the Commission.

### CHAPTER IV

## ARBITRATION

### Section 1

#### REQUEST FOR ARBITRATION

### *Article 36*

(1) Any Contracting State or any national of a Contracting State wishing to institute arbitration proceedings shall address a request to that effect in writing to the Secretary-General who shall send a copy of the request to the other party.

(2) The request shall contain information concerning the issues in dispute, the identity of the parties and their consent to arbitration in accordance with the rules of procedure for the institution of conciliation and arbitration proceedings.

(3) The Secretary-General shall register the request unless he finds, on the basis of the information contained in the request, that the dispute is manifestly outside the jurisdiction of the Centre. He shall forthwith notify the parties of registration or refusal to register.

## Section 2

### CONSTITUTION OF THE TRIBUNAL

#### *Article 37*

(1) The Arbitral Tribunal (hereinafter called the Tribunal) shall be constituted as soon as possible after registration of a request pursuant to Article 36.

(2) (*a*) The Tribunal shall consist of a sole arbitrator or any uneven number of arbitrators appointed as the parties shall agree.

(*b*) Where the parties do not agree upon the number of arbitrators and the method of their appointment, the Tribunal shall consist of three arbitrators, one arbitrator appointed by each party and the third, who shall be the president of the Tribunal, appointed by agreement of the parties.

#### *Article 38*

If the Tribunal shall not have been constituted within 90 days after notice of registration of the request has been dispatched by the Secretary-General in accordance with paragraph (3) of Article 36, or such other period as the parties may agree, the Chairman shall, at the request of either party and after consulting both parties as far as possible, appoint the arbitrator or arbitrators not yet appointed. Arbitrators appointed by the Chairman pursuant to this Article shall not be nationals of the Contracting State party to the dispute or of the Contracting State whose national is a party to the dispute.

#### *Article 39*

The majority of the arbitrators shall be nationals of States other than the Contracting State party to the dispute and the Contracting State whose national is a party to the dispute ; provided, however, that the foregoing provisions of this Article shall not apply if the sole arbitrator or each individual member of the Tribunal has been appointed by agreement of the parties.

#### *Article 40*

(1) Arbitrators may be appointed from outside the Panel of Arbitrators, except in the case of appointments by the Chairman pursuant to Article 38.

(2) Arbitrators appointed from outside the Panel of Arbitrators shall possess the qualities stated in paragraph (1) of Article 14.

## Section 3

POWERS AND FUNCTIONS OF THE TRIBUNAL

### *Article 41*

(1) The Tribunal shall be the judge of its own competence.

(2) Any objection by a party to the dispute that that dispute is not within the jurisdiction of the Centre, or for other reasons is not within the competence of the Tribunal, shall be considered by the Tribunal which shall determine whether to deal with it as a preliminary question or to join it to the merits of the dispute.

### *Article 42*

(1) The Tribunal shall decide a dispute in accordance with such rules of law as may be agreed by the parties. In the absence of such agreement, the Tribunal shall apply the law of the Contracting State party to the dispute (including its rules on the conflict of laws) and such rules of international law as may be applicable.

(2) The Tribunal may not bring in a finding of *non liquet* on the ground of silence or obscurity of the law.

(3) The provisions of paragraphs (1) and (2) shall not prejudice the power of the Tribunal to decide a dispute *ex aequo et bono* if the parties so agree.

### *Article 43*

Except as the parties otherwise agree, the Tribunal may, if it deems it necessary at any stage of the proceedings,

(*a*) call upon the parties to produce documents or other evidence, and

(*b*) visit the scene connected with the dispute, and conduct such inquiries there as it may deem appropriate.

### *Article 44*

Any arbitration proceeding shall be conducted in accordance with the provisions of this Section and, except as the parties otherwise agree, in accordance with the Arbitration Rules in effect on the date on which the parties consented to arbitration. If any question of procedure arises which is not covered by this Section or the Arbitration Rules or any rules agreed by the parties, the Tribunal shall decide the question.

*Article 45*

(1) Failure of a party to appear or to present his case shall not be deemed an admission of the other party's assertions.

(2) If a party fails to appear or to present his case at any stage of the proceedings the other party may request the Tribunal to deal with the questions submitted to it and to render an award. Before rendering an award, the Tribunal shall notify, and grant a period of grace to, the party failing to appear or to present its case, unless it is satisfied that the party does not intend to do so.

*Article 46*

Except as the parties otherwise agree, the Tribunal shall, if requested by a party, determine any incidental or additional claims or counter-claims arising directly out of the subject-matter of the dispute provided that they are within the scope of the consent of the parties and are otherwise within the jurisdiction of the Centre.

*Article 47*

Except as the parties otherwise agree, the Tribunal may, if it considers that the circumstances so require, recommend any provisional measures which should be taken to preserve the respective rights of either party.

Section 4

THE AWARD

*Article 48*

(1) The Tribunal shall decide questions by a majority of the votes of all its members.

(2) The award of the Tribunal shall be in writing and shall be signed by the members of the Tribunal who voted for it.

(3) The award shall deal with every question submitted to the Tribunal, and shall state the reasons upon which it is based.

(4) Any member of the Tribunal may attach his individual opinion to the award, whether he dissents from the majority or not, or a statement of his dissent.

(5) The Centre shall not publish the award without the consent of the parties.

### *Article 49*

(1) The Secretary-General shall promptly dispatch certified copies of the award to the parties. The award shall be deemed to have been rendered on the date on which the certified copies were dispatched.

(2) The Tribunal upon the request of a party made within 45 days after the date on which the award was rendered may after notice to the other party decide any question which it had omitted to decide in the award, and shall rectify any clerical, arithmetical or similar error in the award. Its decision shall become part of the award and shall be notified to the parties in the same manner as the award. The periods of time provided for under paragraph (2) of Article 51 and paragraph (2) of Article 52 shall run from the date on which the decision was rendered.

### Section 5

### Interpretation, Revision and Annulment of the Award

### *Article 50*

(1) If any dispute shall arise between the parties as to the meaning or scope of an award, either party may request interpretation of the award by an application in writing addressed to the Secretary-General.

(2) The request shall, if possible, be submitted to the Tribunal which rendered the award. If this shall not be possible, a new Tribunal shall be constituted in accordance with Section 2 of this Chapter. The Tribunal may, if it considers that the circumstances so require, stay enforcement of the award pending its decision.

### *Article 51*

(1) Either party may request revision of the award by an application in writing addressed to the Secretary-General on the ground of discovery of some fact of such a nature as decisively to affect the award, provided that when the award was rendered that fact was unknown to the Tribunal and to the applicant and that the applicant's ignorance of that fact was not due to negligence.

(2) The application shall be made within 90 days after the discovery of such fact and in any event within three years after the date on which the award was rendered.

(3) The request shall, if possible, be submitted to the Tribunal which rendered the award. If this shall not be possible, a new Tribunal shall be constituted in accordance with Section 2 of this Chapter.

(4) The Tribunal may, if it considers that the circumstances so require, stay enforcement of the award pending its decision. If the applicant requests a stay of enforcement of the award in his application, enforcement shall be stayed provisionally until the Tribunal rules on such request.

*Article 52*

(1) Either party may request annulment of the award by an application in writing addressed to the Secretary-General on one or more of the following grounds :

(*a*) that the Tribunal was not properly constituted ;

(*b*) that the Tribunal has manifestly exceeded its powers ;

(*c*) that there was corruption on the part of a member of the Tribunal ;

(*d*) that there has been a serious departure from a fundamental rule of procedure ; or

(*e*) that the award has failed to state the reasons on which it is based.

(2) The application shall be made within 120 days after the date on which the award was rendered except that when annulment is requested on the ground of corruption such application shall be made within 120 days after discovery of the corruption and in any event within three years after the date on which the award was rendered.

(3) On receipt of the request the Chairman shall forthwith appoint from the Panel of Arbitrators an *ad hoc* Committee of three persons. None of the members of the Committee shall have been a member of the Tribunal which rendered the award, shall be of the same nationality as any such member, shall be a national of the State party to the dispute or of the State whose national is a party to the dispute, shall have been designated to the Panel of Arbitrators by either of those States, or shall have acted as a conciliator in the same dispute. The Committee shall have the authority to annul the award or any part thereof on any of the grounds set forth in paragraph (1).

(4) The provisions of Articles 41-45, 48, 49, 53 and 54, and of Chapters VI and VII shall apply *mutatis mutandis* to proceedings before the Committee.

(5) The Committee may, if it considers that the circumstances so require, stay enforcement of the award pending its decision. If the applicant requests a stay of enforcement of the award in his application, enforcement shall be stayed provisionally until the Committee rules on such request.

(6) If the award is annulled the dispute shall, at the request of either party, be submitted to a new Tribunal constituted in accordance with Section 2 of this Chapter.

## Section 6

RECOGNITION AND ENFORCEMENT OF THE AWARD

### *Article 53*

(1) The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention.

(2) For the purposes of this Section, " award " shall include any decision interpreting, revising or annulling such award pursuant to Articles 50, 51 or 52.

### *Article 54*

(1) Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

(2) A party seeking recognition or enforcement in the territories of a Contracting State shall furnish to a competent court or other authority which such State shall have designated for this purpose a copy of the award certified by the Secretary-General. Each Contracting State shall notify the Secretary-General of the designation of the competent court or other authority for this purpose and of any subsequent change in such designation.

(3) Execution of the award shall be governed by the laws concerning the execution of judgments in force in the State in whose territories such execution is sought.

### *Article 55*

Nothing in Article 54 shall be construed as derogating from the law in force in any Contracting State relating to immunity of that State or of any foreign State from execution.

CHAPTER V

## REPLACEMENT AND DISQUALIFICATION OF CONCILIATORS AND ARBITRATORS

### *Article 56*

(1) After a Commission or a Tribunal has been constituted and proceedings have begun, its composition shall remain unchanged ; provided, however, that if a conciliator or an arbitrator should die, become incapacitated, or resign, the resulting vacancy shall be filled in accordance with the provisions of Section 2 of Chapter III or Section 2 of Chapter IV.

(2) A member of a Commission or Tribunal shall continue to serve in that capacity notwithstanding that he shall have ceased to be a member of the Panel.

(3) If a conciliator or arbitrator appointed by a party shall have resigned without the consent of the Commission or Tribunal of which he was a member, the Chairman shall appoint a person from the appropriate Panel to fill the resulting vacancy.

### *Article 57*

A party may propose to a Commission or Tribunal the disqualification of any of its members on account of any fact indicating a manifest lack of the qualities required by paragraph (1) of Article 14. A party to arbitration proceedings may, in addition, propose the disqualification of an arbitrator on the ground that he was ineligible for appointment to the Tribunal under Section 2 of Chapter IV.

### *Article 58*

The decision on any proposal to disqualify a conciliator or arbitrator shall be taken by the other members of the Commission or Tribunal as the case may be, provided that where those members are equally divided, or in the case of a proposal to disqualify a sole conciliator or arbitrator, or a majority of the conciliators or arbitrators, the Chairman shall take that decision. If it is decided that the proposal is well-founded the conciliator or arbitrator to whom the decision relates shall be replaced in accordance with the provisions of Section 2 of Chapter III or Section 2 of Chapter IV.

CHAPTER VI

## COST OF PROCEEDINGS

### *Article 59*

The charges payable by the parties for the use of the facilities of the Centre shall be determined by the Secretary-General in accordance with the regulations adopted by the Administrative Council.

### *Article 60*

(1) Each Commission and each Tribunal shall determine the fees and expenses of its members within limits established from time to time by the Administrative Council and after consultation with the Secretary-General.

(2) Nothing in paragraph (1) of this Article shall preclude the parties from agreeing in advance with the Commission or Tribunal concerned upon the fees and expenses of its members.

### *Article 61*

(1) In the case of conciliation proceedings the fees and expenses of members of the Commission as well as the charges for the use of the facilities of the Centre, shall be borne equally by the parties. Each party shall bear any other expenses it incurs in connection with the proceedings.

(2) In the case of arbitration proceedings the Tribunal shall, except as the parties otherwise agree, assess the expenses incurred by the parties in connection with the proceedings, and shall decide how and by whom those expenses, the fees and expenses of the members of the Tribunal and the charges for the use of the facilities of the Centre shall be paid. Such decision shall form part of the award.

CHAPTER VII

## PLACE OF PROCEEDINGS

### *Article 62*

Conciliation and arbitration proceedings shall be held at the seat of the Centre except as hereinafter provided.

*Article 63*

Conciliation and arbitration proceedings may be held, if the parties so agree,

(*a*) at the seat of the Permanent Court of Arbitration or of any other appropriate institution, whether private or public, with which the Centre may make arrangements for that purpose ; or

(*b*) at any other place approved by the Commission or Tribunal after consultation with the Secretary-General.

CHAPTER VIII

DISPUTES BETWEEN CONTRACTING STATES

*Article 64*

Any dispute arising between Contracting States concerning the interpretation or application of this Convention which is not settled by negotiation shall be referred to the International Court of Justice by the application of any party to such dispute, unless the States concerned agree to another method of settlement.

CHAPTER IX

AMENDMENT

*Article 65*

Any Contracting State may propose amendment of this Convention. The text of a proposed amendment shall be communicated to the Secretary-General not less than 90 days prior to the meeting of the Administrative Council at which such amendment is to be considered and shall forthwith be transmitted by him to all the members of the Administrative Council.

*Article 66*

(1) If the Administrative Council shall so decide by a majority of two-thirds of its members, the proposed amendment shall be circulated to all Contracting States for ratification, acceptance or approval. Each amendment shall enter into force 30 days after dispatch by the depositary of this Convention of a notification to Contracting States that all Contracting States have ratified, accepted or approved the amendment.

(2) No amendment shall affect the rights and obligations under this Convention of any Contracting State or of any of its constituent subdivisions or agencies, or of any national of such State arising out of consent to the jurisdiction of the Centre given before the date of entry into force of the amendment.

CHAPTER X

# FINAL PROVISIONS

### *Article 67*

This Convention shall be open for signature on behalf of States members of the Bank. It shall also be open for signature on behalf of any other State which is a party to the Statute of the International Court of Justice and which the Administrative Council, by a vote of two-thirds of its members, shall have invited to sign the Convention.

### *Article 68*

(1) This Convention shall be subject to ratification, acceptance or approval by the signatory States in accordance with their respective constitutional procedures.

(2) This Convention shall enter into force 30 days after the date of deposit of the twentieth instrument of ratification, acceptance or approval. It shall enter into force for each State which subsequently deposits its instrument of ratification, acceptance or approval 30 days after the date of such deposit.

### *Article 69*

Each Contracting State shall take such legislative or other measures as may be necessary for making the provisions of this Convention effective in its territories.

### *Article 70*

This Convention shall apply to all territories for whose international relations a Contracting State is responsible, except those which are excluded by such State by written notice to the depositary of this Convention either at the time of ratification, acceptance or approval or subsequently.

### *Article 71*

Any Contracting State may denounce this Convention by written notice to the depositary of this Convention. The denunciation shall take effect six months after receipt of such notice.

### *Article 72*

Notice by a Contracting State pursuant to Articles 70 or 71 shall not affect the rights or obligations under this Convention of that State or of any of its constituent subdivisions or agencies or of any national of that State arising out of consent to the jurisdiction of the Centre given by one of them before such notice was received by the depositary.

### *Article 73*

Instruments of ratification, acceptance or approval of this Convention and of amendments thereto shall be deposited with the Bank which shall act as the depositary of this Convention. The depositary shall transmit certified copies of this Convention to States members of the Bank and to any other State invited to sign the Convention.

### *Article 74*

The depositary shall register this Convention with the Secretariat of the United Nations in accordance with Article 102 of the Charter of the United Nations and the Regulations thereunder adopted by the General Assembly.

### *Article 75*

The depositary shall notify all signatory States of the following :

(*a*) signatures in accordance with Article 67 ;

(*b*) deposits of instruments of ratification, acceptance and approval in accordance with Article 73 ;

(*c*) the date on which this Convention enters into force in accordance with Article 68 ;

(*d*) exclusions from territorial application pursuant to Article 70 ;

(*e*) the date on which any amendment of this Convention enters into force, in accordance with Article 66 ; and

(*f*) denunciations in accordance with Article 71.

Done at Washington in the English, French and Spanish languages, all three texts being equally authentic, in a single copy which shall remain deposited in the archives of the International Bank for Reconstruction and Development, which has indicated by its signature below its agreement to fulfil the functions with which it is charged under this Convention.

For the International Bank for Reconstruction and Development :
[*Pour la Banque internationale pour la reconstruction et le développement:*]

George D. Woods          A. Broches
President          General Counsel
18 March 1965          [*Conseiller juridique*]

For Tunisia :
[*Pour la Tunisie :*]

Rachid Driss
5 /5 /65

For United Kingdom :
[*Pour le Royaume-Uni :*]

Patrick Dean
May 26, 1965

For Jamaica :
[*Pour la Jamaïque :*]

Neville Ashenheim
23rd June 1965

Pour la République de Côte d'Ivoire :
[*For the Republic of the Ivory Coast :*]

D. Agoussi
30 juin 1965

For Pakistan :
[*Pour le Pakistan :*]

G. Ahmed
July 6, 1965

For Nigeria :
[*Pour le Nigéria :*]

S. O. Adebo
July 13, 1965

Pour la République islamique de Mauritanie :
[*For the Islamic Republic of Mauritania :*]

Ahmed Baba Ould Ahmed Miske
July 30, 1965

Pour la République du Niger :
[*For the Republic of Niger :*]

Illa SALIFOU
23 août 1965

Pour la République Centrafricaine :
[*For the Central African Republic :*]

Michel GALLIN-DOUATHE
26 août 1965

For United States :
[*Pour les États-Unis d'Amérique :*]

Henry H. FOWLER
August 27, 1965

For Liberia :
[*Pour le Libéria :*]

J. Charles HANSFORD
September 3, 1965

Pour la République du Dahomey :
[*For the Republic of Dahomey :*]

Louis IGNACIO-PINTO
10 September 1965

Pour la République de Haute-Volta :
[*For the Republic of the Upper Volta :*]

J. BOREMA KABORE
16 September 1965

For Ethiopia :
[*Pour l'Éthiopie :*]

Yilma DERESSA
September 21, 1965

Pour la République gabonaise :
[*For the Gabonese Republic :*]

A. G. ANGUILE
21 September 1965

Pour la République fédérale du Cameroun :
[*For the Federal Republic Cameroon :*]

> Jacques M. KUOH
> 23 September 1965

For Japan :
[*Pour le Japon :*]

> Ryuji TAKEUCHI
> September 23, 1965

For Sweden :
[*Pour la Suède :*]

> G. E. STRÄNG
> September 25, 1965

For Somalia :
[*Pour la Somalie :*]

> A. M. ADAN
> September 27, 1965

For Sierra Leone :
[*Pour le Sierra Leone :*]

> Gershon B. O. COLLIER
> September 27, 1965

For Nepal :
[*Pour le Népal :*]

> S. K. UPADHYAY
> September 28, 1965

Pour le Grand-Duché de Luxembourg :
[*For the Grand Duchy of Luxembourg :*]

> P. WERNER
> September 28, 1965

For Denmark :
[*Pour le Danemark :*]

> Torben RØNNE
> October 11th 1965

Pour le Royaume du Maroc :
[*For the Kingdom of Morocco :*]

D' Ahmed LARAKI
October 11th 1965

For Malaysia :
[*Pour la Malaisie :*]

ONG YOKE LIN
October 22, 1965

For Italy :
[*Pour l'Italie :*]

Sergio FENOALTEA
November 18, 1965

For Ghana :
[*Pour le Ghana :*]

Miguel Augustus RIBEIRO
November 26, 1965

For Belgium :
[*Pour la Belgique :*]

Baron SCHEYVEN
December 15, 1965

For France :
[*Pour la France :*]

Charles LUCET
December 22, 1965

Pour la République du Congo-Brazzaville :
[*For the Republic of the Congo (Brazzaville) :*]

J. MOUANZA
27 décembre 1965

For the Republic of China :
[*Pour la République de Chine :*]

CHOW Shu-kai
January 13, 1966

Pour la République togolaise :
[*For the Togolese Republic :*]

> Docteur Robert AJAVON
> 24 janvier 1966

For the Federal Republic of Germany :
[*Pour la République fédérale d'Allemagne :*]

> K. H. KNAPPSTEIN
> January 27, 1966

For the Republic of Cyprus :
[*Pour la République de Chypre :*]

> Zenon ROSSIDES
> March 9th 1966

For the Kingdom of Greece :
[*Pour le Royaume de Grèce :*]

> Alexander A. MATSAS
> March the 16th, 1966

For the Republic of Korea :
[*Pour la République de Corée :*]

> HYUN CHUL KIM
> April 18, 1966

Pour la République du Tchad :
[*For the Republic of Chad :*]

> Boukar ABDOUL
> Le 12 mai 1966

For Republic of Austria :
[*Pour la République d'Autriche :*]

> Ernst LEMBERGER
> May 17, 1966

For Republic of Kenya :
[*Pour la République du Kenya :*]

> Peter M. ECHARIA
> May 24th, 1966

For the Kingdom of the Netherlands :
[*Pour le Royaume des Pays-Bas :*]

C. Schurmann
May 25, 1966

Pour la République malgache :
[*For the Malagasy Republic :*]

A. Ramaholimihaso
June 1st, 1966

For Uganda :
[*Pour l'Ouganda :*]

S. B. Asda
7th June, 1966

For Malawi :
[*Pour le Malawi :*]

V. H. B. Gondwe
9th June 1966

For Norway :
[*Pour la Norvège :*]

Olaf Solli
June 24th, 1966

For Iceland :
[*Pour l'Islande :*]

Petur Thorsteinsson
July 25, 1966

For Ireland :
[*Pour l'Irlande :*]

William P. Fay
August 30, 1966

For Senegal :
[*Pour le Sénégal :*]

Habib Thiam
26 September 1966

For Afghanistan :
[*Pour l'Afghanistan :*]

> Abdullah YAFTALY
> 30 September 1966

For Trinidad and Tobago :
[*Pour la Trinité et Tobago :*]

> Ellis CLARKE
> 5th October, 1966

---