**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Eiser Infrastructure Limited and
Energia Solar Luxembourg S.A.R.L.,

*Petitioners*,

v.                                                           Case No. 18-cv-01686-CKK

Kingdom of Spain,

*Respondent*.

**EXPERT DECLARATION OF STEFFEN HINDELANG IN SUPPORT OF**
**RESPONDENT KINGDOM OF SPAIN'S MOTION TO DISMISS**
**FOR LACK OF JURISDICTION UNDER THE FSIA**

## I.      INTRODUCTION

1.      I, STEFFEN HINDELANG, make this declaration based upon my personal knowledge, except as to those statements made upon information and belief, and I believe all such statements, and the information upon which they are based, to be true.

2.      I am a German national, born on December 6, 1978.

3.      I am Professor at the Department of Law of the University of Southern Denmark in Odense.  I teach and research in the areas of EU law, international economic law, in particular, international investment law, and German public law.  Previously I was guest professor at the Faculty of Law of the University of Uppsala as a Swedish Prize Laureate (2018), senior research associate and senior lecturer at Humboldt-Universität zu Berlin (20102011) and research associate and lecturer at the University of Tübingen (2004-2009), both in Germany.  I am also a senior fellow at the Walter Hallstein Institute of European Constitutional Law at Humboldt-Universität zu Berlin.  My CV and the list of my publications are attached respectively as Exhibit 1 and Exhibit 2 to this declaration.

4.     I have no familial or business relationship or affiliation with either party to the above-captioned matter.  I have never provided legal advice or represented either of them in any capacity.

5.     I have been asked by counsel for the Respondent in the above-captioned action, the Kingdom of Spain ("Spain"), to give my expert opinion on the following issues of EU law:

(a)     The European Union ("EU") law principles relevant to the above-captioned matter;

(b)     Whether EU law precludes the application of Article 26 of the Energy Charter Treaty ("ECT") to disputes between an investor from one EU Member State and another EU Member State;

6.     I have relied on the following materials to form my opinion:

(a)     *Eiser Infrastructure Limited and Energia Solar Luxembourg S.À.R.L. v. Kingdom of Spain*, ICSID Case No. ARB/13/36, Award (May 4, 2017) ("Award"), attached as Exhibit A to the Declaration of Matthew S. Rozen (D.E. 1-1).

(b)     Petition to Enforce Foreign Arbitral Award, dated July 19, 2018, *Eiser Infrastructure Limited and Energia Solar Luxembourg S.À.R.L. v. Kingdom of Spain*, Civil Action No. 1:18-cv-1686-CKK (D.E. 1).

(c)     European Commission, Application for Leave to Intervene as a Non-Disputing Party, ICSID Case No. ARB/13/36 – Annulment Proceedings (July 19, 2018), attached as Exhibit 1 to the Declaration of Miriam K. Harwood filed concurrently herewith.

      (d)      The European Commission's *Amicus Curiae* Submission in *Eiser Infrastructure Limited and Energia Solar Luxembourg S.À.R.L. v. Kingdom of Spain*, ICSID Case No. ARB/13/36 – Annulment Proceedings (Nov. 12, 2018), attached as Exhibit 3 to the Declaration of Miriam K. Harwood filed concurrently herewith.

7.      A true and correct copy of all legal authorities I have relied upon are produced and attached hereto as Exhibits to my Declaration.

8.      My expertise is restricted to EU law and relevant public international law. I do not express an opinion on any other law in this declaration.

9.      I am being compensated at a rate of EUR 500 per hour to prepare this expert declaration and, if required, to testify in this matter.

## II.     Relevant Rules and Principles of the EU Legal Order

10.      The European Union is comprised of 28 Member States that have ceded to it aspects of sovereignty to establish one integrated Europe characterized by common laws, values, and a single internal market. Its two main foundational instruments are the Treaty on European Union, 2010 O.J. (C 83) 1 ("TEU") (Exhibit 3), and the Treaty on the Functioning of the European Union, May 9, 2008, 2008 O.J. (C 115) 47 ("TFEU") (Exhibit 4, and together with the TEU, the "EU Treaties") signed and ratified by all EU Member States. The EU's institutions include the European Parliament, the European Council, the Council, the European Commission, the Court of Justice of the European Union, the European Central Bank, and the Court of Auditors. *See* TEU, art. 13(1).

11.      The most important primary sources of EU law are the EU Treaties and the Charter of Fundamental Rights of the European Union, 2010 O.J. (C 83) 2 ("Charter of Fundamental Rights") (Exhibit 5).  EU law also includes secondary legislation based on the EU Treaties adopted

by the EU's institutions, including regulations, directives and decisions.  In the EU legal order, the

EU Treaties take precedence over any other EU law, including international agreements concluded

by the EU. *See* CJEU, Case 26/78, ECLI:EU:C:1978:172, ¶ 9 – *Viola* (Exhibit 6)*; CJEU, Joined

Cases C-402/05 P and C-415/05 P, ECLI:EU:C:2008:461, ¶ 285 – *Kadi* (Exhibit 7).  In addition, EU

law incorporates the jurisprudence of the Court of Justice of the European Union ("CJEU").[1]

12.     Several features of the EU legal order are relevant to the Eiser Parties' petition to

enforce the Award in the United States.

### A.     The Dual Nature of the EU Legal Order: Public International Law and a Constitutional Framework Creating Law in Force in the EU Member States

13.     The European Union is a legal entity that falls between a federal State and an

international organization. Its legal order is therefore both a highly elaborate legal regime in public

international law and a constitutional framework creating law applicable in EU Member States.

This dual legal order enables EU Member States, including Spain, to work to achieve "an ever

closer union among the peoples of Europe." *See* TFEU, Preamble (Exhibit 4); TEU, Preamble and

Art. 1 (Exhibit 3).

14.     In its recent judgment in *Slovak Republic v. Achmea*, the CJEU explained that

"[g]iven the nature and characteristics of EU law . . . that law must be regarded both as forming

part of the law in force in every Member State and as deriving from an international agreement

between the Member States." CJEU, Case C-284/16, ECLI:EU:C:2018:158, ¶ 41 – *Achmea*

("*Achmea*") (Exhibit 9). Thus, in addition to being instruments of international law, the EU

Treaties together with other EU law, form part of the national laws of EU Member States. *See,*

---

[1] [1] The CJEU functions in accordance with the EU Treaties and its statute. *See* Statute's Consolidated Version of the Statute of the Court of Justice of the European Union (Exhibit 8).

*e.g.*, CJEU, Case 6/64, ECLI:EU:C:1964:66, 593. Ruling – *Costa v. ENEL* (Exhibit 10); CJEU, Case 106/77, ECLI:EU:C:1978:49, ¶ 21 – *Simmenthal II* ("*Simmenthall II*") (Exhibit 11).

### B.    The EU Judicial System and Its Governing Principles

15.    The EU judicial system is governed by the EU Treaties. *See* TEU, art. 19 (Exhibit 3); TFEU, art. 251 *et seq.* (Exhibit 4*). While each EU Member State establishes its own courts and tribunals, all such courts and tribunals must apply and interpret EU law.  *See* TEU, art. 19(1) (Exhibit 3); Charter of Fundamental Rights, arts. 47, 51(1) (Exhibit 5); CJEU, Case 26/62, ECLI:EU:C:1963:1, 7 – *van Gend & Loos* (Exhibit 12).

16.    The CJEU has exclusive jurisdiction in ultimately determining the content and scope of EU law.  Its mandate is to ensure that "in the interpretation and application of the Treaties the [EU] law is observed." TEU, art. 19(1) (Exhibit 3).  The CJEU reviews the legality of the acts of the institutions of the European Union, ensures that the Member States comply with obligations under the EU Treaties, and interprets EU law at the request of national courts and tribunals.  *See* TEU, art. 19 (Exhibit 3); TFEU, art. 251 *et seq* (Exhibit 4*).  In so doing, the CJEU preserves the unique characteristics of EU law and guarantees equality under the law.  *See* TEU, Preamble, arts. 2, 9 (Exhibit 3).  In EU law terminology: it preserves *the autonomy of EU law*.[2]

17.    In accordance with the principle of autonomy of EU law, the CJEU's exclusive authority may not be circumvented or hampered by the action of EU Member States or other EU

---

[2] The principle of autonomy of EU law has been set out in a series of decisions and opinions of the CJEU. *See* CJEU, Opinion 1/91, ECLI:EU:C:1991:490, ¶ 35 – *EEA* (Exhibit 13); CJEU, Opinion 1/00*, ECLI:EU:C:2002:231 ¶ 11-12 – *European Common Aviation Area* (Exhibit 14); CJEU, Opinion 1/09, ECLI:EU:C:2011:123, ¶¶ 77 *et seq*. – *European and Community Patents Court* ("Opinion 1/09") (Exhibit 15); CJEU, Opinion 2/13, ECLI:EU:C:2014:2454 – *ECHR* (Exhibit 16); CJEU, Case C-196/09, ECLI:EU:C:2011:388 – *Paul Miles e.a. v. Écoles européennes* (Exhibit 17); CJEU, Case C-284/16, ECLI:EU:C:2018:158 – *Achmea* (Exhibit 9).

institutions.   For example, the jurisprudence of the CJEU establishes that "an international agreement cannot affect the allocation of powers fixed by the [EU] Treaties or, consequently, the autonomy of the EU legal system, observance of which is ensured by the Court."  CJEU, Opinion 2/13, ECLI:EU:C:2014:2454, ¶ 201 – *ECHR* (Exhibit 16).  *See, e.g.,* CJEU, Opinions 1/91, ECLI:EU:C:1991:490, ¶ 35 (Exhibit 13), and 1/00, ECLI:EU:C:2002:231, ¶¶ 11-12 (Exhibit 14); CJEU Judgments in C-459/03, ECLI:EU:C:2006:345, ¶¶ 123, 136 – *Commission* v *Ireland* (Exhibit 18) and Joined Cases C-402/05 P and C-415/05 P, ECLI:EU:C:2008:461, ¶ 282 – *Kadi* (Exhibit 7).

18.    In case of a conflict between a rule created by the EU Member States and EU law, EU law takes precedence and overrides such a rule.  This is referred to as the principle of primacy of EU law.  This fundamental principle was described in the CJEU's landmark *Simmenthal II* judgement:

> [E]very national court must, in a case within its jurisdiction, apply [EU] law in its entirety ... and must accordingly *set aside any* provision of national law which may conflict with it, *whether prior or* subsequent to the [EU] rule.
>
> Accordingly any provision of a national legal system and any legislative, administrative or judicial practice which might impair the effectiveness of [EU] law by withholding from the national court having jurisdiction to apply such law *the power* to do everything necessary at the moment of its application *to set aside national legislative provisions* which might prevent [EU] rules from having full force and effect *are incompatible* with those requirements which are the *very essence of [EU] law*.

*Simmenthal II*, ¶¶ 21-22 (emphasis added) (Exhibit 11).

19.    The principle of primacy of EU law need not be pleaded by concerned parties; it must be applied by the competent court or tribunal on its own motion. *Id.*, ¶ 24.  Nor is it necessary for a court, tribunal or party "to request or await the prior setting aside of such provision by legislative or other constitutional means." *Id.*

20.    The principle of primacy of EU law is not limited to EU Member States' courts and tribunals but requires any competent authority created by an EU Member State to both apply and give full effect to EU law.  *See* CJEU, Joined Cases 205 to 215/82, ECLI:EU:C:1983:233 – *Deutsche Milchkontor*, ¶¶ 17, 22 *et seq.* (Exhibit 19); CJEU, Case C-231/96, ECLI:EU:C:1998:401 – *Edis* (Exhibit 20)*.*  Thus, any competent authority applying EU law must disregard any rule created by an EU Member State that conflicts with EU law.  Moreover, it falls upon all concerned EU Member State authorities to correct the incompatibility and align their laws with EU law.  *See* CJEU, Joined Cases C-231/06 to C-233/06, ECLI:EU:C:2007:373, ¶¶ 38, 41 – *Jonkman et al* (Exhibit 21)*.*

21.    The principle of primacy of EU law applies to rules created by EU Member States in agreements concluded between them in public international law.  *See* CJEU, Case 10/61, ECLI:EU:C:1962:2, 10 – *Commission v. Government of the Italian Republic* (Exhibit 22); CJEU, Case C-3/91, ECLI:EU:C:1992:420, ¶ 8 – *Exportur* (Exhibit 23); CJEU, Case C-469/00, ECLI:EU:C:2003:295, ¶¶ 36-37 – *Ravil* (Exhibit 24); CJEU, Case C-478/07, ECLI:EU:C:2009:521, ¶ 98 – *Budějovický Budvar* (Exhibit 25); CJEU, Case C-546/07, ECLI:EU:C:2010:25, ¶ 44 – *Commission v. Germany* (Exhibit 26)*.*  The CJEU expressly held this, for example, in relation to agreements in public international law between the Republic of Austria and the Czechoslovak Socialist Republic relating to agricultural and industrial products:

> [S]ince the bilateral instruments at issue now concern two Member States, their provisions cannot apply in the relations between those States if they are found to be contrary to the rules of the [EU Treaties].

CJEU, Case C-478/07, ECLI:EU:C:2009:521, ¶ 98 – *Budějovický Budvar* (Exhibit 25).

22.    The principles of autonomy and primacy are reflected in the provisions of the TFEU.  Article 267 establishes a preliminary ruling procedure that permits national courts to obtain rulings from the CJEU on questions concerning the interpretation and validity of EU law.  The

CJEU has described this keystone of the EU legal system as providing national courts with "the most extensive power, or even the obligation, to make a reference to the [CJEU] if they consider that a case pending before them raises issues involving an interpretation or assessment of the validity of the provisions of European Union law and requiring a decision by them."  CJEU, Opinion 1/09, ECLI:EU:C:2011:123, ¶ 83 – *European and Community Patents Court* (Exhibit 15). The preliminary ruling procedure is designed to promote equality under the law by preventing divergences in the interpretation of EU law and to ensure that EU law is given its full effect within the framework of the judicial system of the EU Member States.  *See id.*

23.    Article 344 of the TFEU prohibits EU Member States from submitting a dispute concerning the interpretation or application of the EU Treaties "to any method of settlement other than those provided for therein."  *See* CJEU Opinion 2/13 – *ECHR*, ¶ 201 (Exhibit 16). This ensures that only courts which are able to refer questions to the CJEU under Article 267, i.e., the national courts and tribunals of the EU Member States, may be called upon to interpret EU law. *See id.*, ¶ 210.  As the CJEU has explained, the relationship between the member states is "governed by EU law to the exclusion … of any other law," if EU law so requires.  *Id.*, ¶ 212 .

24.    The CJEU has stressed the fundamental importance of its direct communication with the national courts of EU Member States through the Article 267 procedure.  Its Opinion 1/09, which addressed the lawfulness of a proposed European and Community Patents Court, held that EU Member States

> cannot confer the jurisdiction to resolve . . . disputes on a court created by an international agreement which would deprive [national] courts of their task, as 'ordinary' courts within the European Union legal order, to implement European Union law and, thereby, of the power provided for in Article 267 TFEU.

Opinion 1/09, ¶ 80 (Exhibit 15).

25.     This mechanism for communicating between the CJEU and national courts ensures

the uniform application and primacy of EU law because judgments rendered by the CJEU under

Article 267 on interpretation of EU law have general, binding effect in all EU Member States.

This well-settled proposition was recently confirmed by the CJEU:

> Article 267 TFEU is to be interpreted as meaning that, after receiving the answer of the Court of Justice of the European Union to a question concerning the interpretation of EU law which it has submitted to the Court, or where the case-law of the Court of Justice of the European Union already provides a clear answer to that question, *a chamber of a court of final instance is itself required to do everything necessary to ensure that that interpretation of EU law is applied.*

CJEU, Case C-689/13, ECLI:EU:C:2016:199, 3. Ruling – *Puligienica Facility Esco SpA (PFE) v. Airgest SpA* (emphasis added) (Exhibit 27).

26.     In addition, the judgments of the CJEU have retroactive effect.  The CJEU has

explained:

> The interpretation which, in the exercise of the jurisdiction conferred on it by [Art. 267 TFEU], the Court of Justice gives to a rule of Community [now Union] law clarifies and defines where necessary the meaning and scope of that rule as it must be or ought *to have been understood and applied from the time of its coming into force*. It follows that the rule as thus interpreted may, and *must, be applied by the courts even to legal relationships arising and established before the judgment ruling on the request for interpretation*.

CJEU, Joined Cases 66, 127 and 128/79, ECLI:EU:C:1980:101, ¶ 9 – *Salumi* (emphasis added) (Exhibit 28).

27.     In short, the CJEU's rulings in the preliminary ruling procedure are binding as to

EU law, setting the content and meaning of a given rule *ab initio*.

## C.     Protection of EU Member State Investors under EU Law

28.     EU law covers a number of subjects, including the EU's common commercial,

agricultural, and transport policies, and its rules governing competition and the free movement of

goods, persons, services, and capital. *See* L. WOODS ET AL., STEINER & WOODS EU LAW 55-58, 323-26 (13th ed. 2017) ("STEINER & WOODS EU LAW") (Exhibit 29).

29.     In respect of investors from one EU Member State with investments in another EU Member State, EU law guarantees that capital can circulate freely throughout the EU, and that investors enjoy freedom to establish a business, to invest in companies, and to provide services across the EU's internal borders. *See* TFEU, arts. 49, 56, 57, 63(1) (Exhibit 4).  EU investors enjoy the fundamental rights protected by the Charter of Fundamental Rights, which guarantees the rights to property, access to justice, and non-discrimination.  *See* Charter of Fundamental Rights, arts. 17, 21, 47-50, (Exhibit 5).  EU investors are also protected by general principles of EU law, such as proportionality, legal certainty, and the protection of legitimate expectations.  *See* Charter of Fundamental Rights, arts. 17, 21, 47, 52 (Exhibit 5); CJEU, Case 8/55, ECLI:EU:C:1956:11, p. 299 – *Fédération Charbonnière de Belgique v. High Authority* (Exhibit 30); CJEU, Case T-115/94, ECLI:EU:T:1997:3, ¶¶ 78, 82-83, 89-94 – *Opel Austria v. Council* (Exhibit 31); CJEU, Case 120/86, ECLI:EU:C:1988:213, ¶¶ 2, 21-27 – *Mulder* (Exhibit 32). *See also* PAUL CRAIG & GRÁINNE DE BÚRCA, EU LAW 229-31 (6th ed. 2015) ("CRAIG & DE BÚRCA") (Exhibit 33).

30.     Investors have access to the EU Member States' national courts to vindicate these rights under EU law.   Under Article 19(1), Member States are obliged to provide remedies sufficient to ensure effective legal protection in the fields covered by EU law.  *See* CJEU, C64/16, ECLI:EU:C:2018:117, ¶¶ 29, 34 – *Associação Sindical dos Juízes Portugueses* (Exhibit 34); CRAIG & DE BÚRCA 239-50 (Exhibit 33).  EU Member States are liable for damage or loss caused to any legal or natural persons as a result of violations of EU law for which the State can be held responsible; and an aggrieved individual or company can bring a suit against an EU Member State

in national courts.  *See* CJEU, Case C-6/90, ECLI:EU:C:1991:428, ¶¶ 28 *et seq. – Francovich*
(Exhibit 35); CRAIG & DE BÚRCA 251-52, 261-62 (Exhibit 33).

31.     In all these cases, if a court of an EU Member State is in doubt concerning the
precise content and meaning of EU law, it can refer the question to the CJEU.  The CJEU's rulings
must then be observed by the courts across the EU Member States, ensuring that all EU investors
within the EU enjoy the same rights under EU law.

**III.    The Principles of Autonomy and Primacy as Articulated by the CJEU in *Achmea*
Mean that Article 26 of the ECT Does Not Apply between EU Member States and
Preclude an EU Member State from Extending a Valid Offer to Arbitrate to a
National of Another EU Member State**

32.     Any legal rule on dispute resolution originating from an international treaty entered
into between EU Member States that contradicts the EU judicial system violates the principles of
primacy and autonomy of EU law and particularly Articles 344 and 267 of the TFEU.  Such rule
cannot be applied between Member States.  The CJEU recently addressed this in the context of an
investment treaty between the Netherlands and the Slovak Republic that included in Article 8, a
provision allowing certain disputes between an investor from one State and the other State to be
referred to arbitration.  Article 8 also required the arbitral tribunal to decide the case on the basis
of the parties' agreements, the law of the contracting state concerned, and "the general principles
of international law."  *Achmea* ¶ 4(6) (Exhibit 9).

33.     The question presented in *Achmea* was whether Article 8 contained a valid offer to
arbitrate.  In the absence of such offer, a valid arbitration agreement would never have existed
between the Slovak Republic, a member state of the EU, and Achmea, a company incorporated
under the laws of the Netherlands, another EU member state, under the investment treaty between
the Netherlands and the Slovak Republic.  *Achmea*, ¶¶ 5, 23 (Exhibit 9).

34.     Achmea commenced arbitration pursuant to that dispute resolution provision in Article 8, alleging that Slovakia had breached its obligations under the investment treaty. *Achmea*, ¶ 9 (Exhibit 9).  Slovakia objected to the tribunal's jurisdiction, arguing that, as a result of its accession to the EU, the dispute resolution provision in the investment treaty was incompatible with EU law. *Achmea*, ¶¶ 11, 14 (Exhibit 9).   The tribunal disagreed and asserted jurisdiction over the dispute.  The tribunal eventually rendered an award in favor of Achmea. *Achmea*, ¶ 12 (Exhibit 9).  The place of the arbitration was Germany, and thus German law, which includes EU law, governed the arbitration. *Achmea*, ¶ 10 (Exhibit 9).

35.     Slovakia applied to have the award set aside in the German courts on the grounds that the arbitration agreement between Slovakia and Achmea was "invalid under the law to which the parties have subjected it" because it was incompatible with EU law, namely Articles 18, 267, and 344 of the TFEU. *Achmea*, ¶¶ 5, 12, 14 (Exhibit 9).  The German court of first instance dismissed the action, and Slovakia appealed to the Federal Court of Justice, Germany's highest court of civil jurisdiction. *Id.*  Because the case raised an important question of EU law on which the CJEU had not yet ruled, the Federal Court of Justice referred the matter to the CJEU in accordance with the preliminary ruling procedure.  The German court requested a ruling on whether Articles 267 and 344 of the TFEU precluded the enforcement of an arbitration agreement between an EU member state and an investor of another EU member state as provided for under Article 8 of the BIT. *Achmea*, ¶ 23 (Exhibit 9).

36.     The CJEU ruled that such offers to arbitrate by an EU Member State to a national of another EU Member State in an international agreement are precluded by EU law, including the principles of primacy and autonomy and Articles 267 and 344 of the TFEU.  It held:

> Articles 267 and 344 TFEU must be interpreted as precluding a provision in an
> international agreement concluded between Member States, such as Article 8 of the

Agreement on encouragement and reciprocal protection of investments between the Kingdom of the Netherlands and the Czech and Slovak Federative Republic, under which an investor from one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an arbitral tribunal whose jurisdiction that Member State has undertaken to accept.

*Achmea*, ¶ 62 (Exhibit 9).  In so holding, the CJEU re-affirmed the centrality of the *judicial dialogue* between the CJEU and the EU Member states' courts to the EU legal order, holding that such judicial dialogue may not be prevented by a provision for investor-State arbitration between a national of one EU Member State and another EU Member State:

[T]he possibility of submitting those disputes to a body which is not part of the judicial system of the EU . . . call[s] into question . . . the preservation of the particular nature of the law established by the [EU] Treaties, ensured by the preliminary ruling procedure provided for in Article 267 TFEU, and . . . has an adverse effect on the autonomy of EU law.

*Achmea*, ¶¶ 58-59 (Exhibit 9).

37.     Accordingly, in a decision published on November 8, 2018, the Federal Court of Justice applied the CJEU's decision in *Achmea* and set aside Achmea's award because, "[a]ccording to the decision of the European Court of Justice [CJEU] . . . there is no arbitration agreement between the parties" and, under German law, "[t]he absence of an arbitration agreement is equivalent to its invalidity."  Bundesgerichtshof [BGH] [Federal Court of Justice] Nov. 8, 2018, I ZB 2/15, ¶¶ 14, 15 (a true and correct copy of the German original and a certified translation thereof is attached hereto as Exhibit 36).

38.     The recent *Achmea* ruling is consistent with the CJEU's earlier decision in Opinion 1/09.  While there are differences between the proposed European and Community Patents Court addressed in Opinion 1/09 and the arbitral tribunal in *Achmea* formed to arbitrate investment disputes between an EU Member State and a national of another EU Member State, these dispute resolution mechanisms are comparable in a crucial respect: neither permits access to the

preliminary ruling procedure.  In both instances, EU law issues could not be resolved in the EU Member States' national courts and, hence, could not be referred to the CJEU by means of Article 267 of the TFEU.  This precise aspect was found to be incompatible with the requirements of EU law in both *Achmea* and Opinion 1/09.

39.     This same principle applies in regard to Article 26 of the ECT, which, for fundamentally the same reasons explained by the CJEU in *Achmea*, cannot be applied between EU Member States and thus does not contain a valid offer by an EU Member State to arbitrate with nationals of other EU Member States.  Such an offer is precluded by the principles of primacy and autonomy and particularly by the Articles 267 and 344 of the TFEU.

40.     Article 26 of the ECT runs afoul of these principles as it circumvents the preliminary ruling procedure under Article 267 of the TFEU and hampers the CJEU's exclusive authority to ultimately determine the content and validity of EU law.  This renders Article 26 of the ECT inoperative *ab initio* for such intra-EU disputes.  As a result, Spain did not make a legally permissible offer to arbitrate based on Article 26 of the ECT to an investor from another EU Member State, such as the Eiser Parties.

41.     Further, a tribunal purportedly constituted under Article 26 of the ECT in relation to a dispute between an EU Member State and a national of another EU Member State would be required to apply Article 26(6) of the ECT, which provides that "[a] tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law."  EU law is public international law.  The "applicable rules and principles of international law" between EU Member States therefore include EU law.  This includes the EU Treaties, as interpreted by the CJEU, and specifically the principle of primacy and the principle of autonomy as reflected in Articles 267 and 344 of the TFEU.

42.     A tribunal purportedly constituted under Article 26 of the ECT would therefore be required to apply and duly observe the rules of EU law that limit or conflict with its own jurisdiction.  It would have to observe the principle of autonomy of EU law as well as the primacy of EU law over any conflicting rule created by the EU Member States.  Application of these rules would require the tribunal to determine that no legally permissible offer was made by an EU Member State to arbitrate with nationals of other EU Member States under the ECT because the essential attributes of such arbitral tribunals are the same as what caused the CJEU to hold in *Achmea* that EU law precludes arbitration before tribunals formed under Article 8 of the Netherlands-Slovak Republic investment treaty.  More specifically, an arbitration tribunal constituted under Article 26 of the ECT, like the intra-EU investment tribunal scrutinized in *Achmea*, does not qualify as a "court or tribunal of a Member State."  The arbitration tribunal lacks the required "links with the judicial systems of the Member States" and follows procedures that are not "a step in the proceedings before the national courts."  *Achmea*, ¶ 48 (Exhibit 9).

43.     Moreover, an Article 26 arbitral tribunal "may be called on to interpret or indeed to apply EU law, particularly the provisions concerning the fundamental freedoms, including freedom of establishment and free movement of capital."  *Id.*, ¶ 42.  In that regard, the CJEU stressed in *Achmea* that to violate EU law, it is not necessary that a tribunal actually apply and interpret any of the substantive provisions of EU law in the case before it.  Rather, it suffices that such a tribunal "*may*" do so.  *Id.*  The Bundesgerichtshof [German Federal Court of Justice], in its ruling in proceedings to overturn the final award in *Achmea*, I ZB 2/15, ¶ 32 (Exhibit 36), put this in even more unmistakable language:

> [I]t does not matter whether the arbitration tribunal did not actually apply Union law in a dispute and did not have to apply it.  In order to determine whether an arbitration agreement exists between the parties, the only question that is relevant is whether the applicant was able to submit an effective offer to conclude an arbitration

agreement against the respondent . . . .   According to the ruling of the European Court of Justice [CJEU], this was not the case, irrespective of whether the arbitration tribunal had to apply Union law in the event of a dispute or not.

44.     A tribunal formed under Article 26 of the ECT may be called upon to interpret or apply EU law in regard to a range of issues.  For example, in an arbitration in which the claimant alleges that the respondent State has breached the requirement under Article 10(1) of the ECT to provide investment with fair and equitable treatment, including by failing to meet the investor's legitimate expectations, the content of those expectations may need to be assessed by reference to the prevailing legal regime, which includes the applicable EU regulatory framework.  More broadly, a tribunal might have to address the provisions of EU law that govern such matters as the movement of capital, freedom of establishment and to provide services, competition, non-discrimination, or any restrictive measures in relation to foreign investment.  *See*, e.g. STEINER & WOODS EU LAW 416-20, 469-74, 478 (Exhibit 29); CRAIG & DE BÚRCA 721-23, 801-05, 810, 820-21 (Exhibit 33).  CJEU, Case C299/02, ECLI:EU:C:2004:620, ¶ 15 – *Commission v. The Netherlands* (Exhibit 37).  At a minimum, a tribunal constituted under Article 26 of the ECT would have to decide whether and how EU law affects its jurisdiction to arbitrate an intra-EU investment dispute – a decision that itself requires the interpretation and application of EU law.

45.     In addition, like a tribunal formed under Article 8 of the Netherlands-Slovak Republic investment treaty, a tribunal constituted under Article 26 of the ECT is unable to refer questions concerning EU law to the CJEU under Article 267 of the TFEU.  According to Article 267(2) of that treaty only a "court or tribunal of a Member State" may refer questions of interpretation and validity of EU law to the CJEU.  This, in turn, means that questions of interpretation and application of EU law would not reach the CJEU, depriving national courts of the EU Member States of part of their jurisdiction and the CJEU of its exclusive authority over the ultimate interpretation and lawful application of EU law.  This failure puts the uniform

interpretation of EU law at risk, undermines the full effect and autonomy of EU law, and transgresses the legal level playing field that is central to the EU legal regime. *See Achmea*, ¶ 37 (Exhibit 9).

46.     Finally, *Achmea* makes clear that review of an arbitral award by a national court of an EU Member State in a set aside proceeding does not cure the problem.  Reference of disputes to resolution by investor-state arbitration is barred by the EU Treaties even where set aside proceedings might be available as the primacy of EU law and the autonomy of its legal order as required by Articles 267 and 344 of the TFEU cannot be ensured.  That is because such review is limited in scope under national laws, even if the seat of arbitration is an EU Member State, as was the case in *Achmea*.  *See Achmea*, ¶¶ 54-55 (Exhibit 9).  Such review will not cover all issues decided by the arbitration tribunal, and the tribunal itself cannot refer questions to the CJEU.

47.     The primacy of EU law and the autonomy of its legal order as required by Articles 267 and 344 of the TFEU are put even more at risk where the arbitral proceedings are governed by the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention"), like in the case at hand, where review by EU Member State courts is even more limited (cf. ICSID Convention Articles 49(2), 51-53, 55).[3]

48.     The CJEU's reasoning in *Achmea* thus fully applies to the ECT and the situation in *Eiser*.  As with the treaty in *Achmea,* in the ECT, the Member States parties to it established a mechanism for settling disputes between an investor and a Member State which could prevent those disputes from being resolved in a manner that ensures the full effectiveness of EU law, even though they might concern the interpretation or application of that law.  *Achmea*, ¶ 56 (Exhibit 9).  Hence,

---

[3] A copy of the ICSID Convention is attached as Exhibit 2 to the Eiser Parties' Petition to Enforce Arbitral Award (D.E. 1-2).

a tribunal constituted under Article 26 of the ECT to arbitrate an intra-EU investment dispute violates core principles of EU law and is thus not empowered to resolve the dispute.[4]

49.     Consequently, as in *Achmea*, "Articles 267 and 344 TFEU must be interpreted as precluding" the application of Article 26 of the ECT between EU Member States. *See Achmea*, ¶ 62 (Exhibit 9).  An investment tribunal established on the basis of the ECT, such as the one in *Eiser*, must decline its jurisdiction in an intra-EU dispute.  This is because there has never been and, indeed, never could have been a valid offer to arbitrate from one EU Member State to an investor from another EU Member State.  Therefore, no arbitration agreement could exist between them.

50.     This remains the case even though the tribunal in *Eiser* rendered its Award on May 4, 2017, before the CJEU gave its Judgment in *Achmea* on March 6, 2018.  The CJEU's ruling that the applicable principles of EU law preclude such references to arbitration has retroactive effect to the foundation of what is called today the EU.  Hence, no valid offer could have been made by any EU Member State to arbitrate disputes with nationals of other EU Member States from the moment the ECT was concluded.

---

[4] My analysis is consistent with the European Commission's position.  *See Communication from the Commission to the European Parliament and the Council*: *Protection of intra-EU investment*, at 3-4, COM (2018) 547 final (July 19, 2018) (Exhibit 38) (observing that the CJEU's holding and reasoning in *Achmea* applies equally to the dispute resolution provisions in Article 26 of the ECT); European Commission, *Decision on State aid SA.40348 (2015/NN), Spain: Support for electricity generation from renewable energy sources, cogeneration and waste* 2017 O.J. (C442) ¶ 160, 163 (Nov. 11, 2017) (Exhibit 39) (explaining that the "ECT does not apply to investors from other Member States initiating disputes against another Member States [*sic*]" because "any provision that provides for investor-State arbitration between two Member States is contrary to Union [EU] law").

I declare under the penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Signed on December 14, 2018
Berlin, Germany

_____
Steffen Hindelang