IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Eiser Infrastructure Limited and Energia Solar Luxembourg S.A.R.L., <br><br> *Petitioners*, <br><br> v. <br><br> Kingdom of Spain, <br><br> *Respondent*. | Civil Action No. 1:18-cv-01686-CKK |

**Expert Declaration of Andrea K. Bjorklund**

# EXHIBIT 17

# No. 18232

## MULTILATERAL

**Vienna Convention on the law of treaties (with annex). Concluded at Vienna on 23 May 1969**

*Authentic texts:* English, French, Chinese, Russian and Spanish.
*Registered* ex officio *on 27 January 1980.*

## MULTILATÉRAL

**Convention de Vienne sur le droit des traités (avec annexe). Conclue à Vienne le 23 mai 1969**

*Textes authentiques :* anglais, français, chinois, russe et espagnol.
*Enregistrée d'office le 27 janvier 1980.*

2. Unless the treaty otherwise provides or the negotiating States have otherwise agreed, the provisional application of a treaty or a part of a treaty with respect to a State shall be terminated if that State notifies the other States between which the treaty is being applied provisionally of its intention not to become a party to the treaty.

PART III. OBSERVANCE, APPLICATION AND INTERPRETATION OF TREATIES

SECTION 1. OBSERVANCE OF TREATIES

*Article 26.* "PACTA SUNT SERVANDA"

Every treaty in force is binding upon the parties to it and must be performed by them in good faith.

*Article 27.* INTERNAL LAW AND OBSERVANCE OF TREATIES

A party may not invoke the provisions of its internal law as justification for its failure to perform a treaty. This rule is without prejudice to article 46.

SECTION 2. APPLICATION OF TREATIES

*Article 28.* NON-RETROACTIVITY OF TREATIES

Unless a different intention appears from the treaty or is otherwise established, its provisions do not bind a party in relation to any act or fact which took place or any situation which ceased to exist before the date of the entry into force of the treaty with respect to that party.

*Article 29.* TERRITORIAL SCOPE OF TREATIES

Unless a different intention appears from the treaty or is otherwise established, a treaty is binding upon each party in respect of its entire territory.

*Article 30.* APPLICATION OF SUCCESSIVE TREATIES RELATING TO THE SAME SUBJECT-MATTER

1. Subject to Article 103 of the Charter of the United Nations, the rights and obligations of States parties to successive treaties relating to the same subject-matter shall be determined in accordance with the following paragraphs.

2. When a treaty specifies that it is subject to, or that it is not to be considered as incompatible with, an earlier or later treaty, the provisions of that other treaty prevail.

3. When all the parties to the earlier treaty are parties also to the later treaty but the earlier treaty is not terminated or suspended in operation under article 59, the earlier treaty applies only to the extent that its provisions are compatible with those of the later treaty.

4. When the parties to the later treaty do not include all the parties to the earlier one:

(*a*) As between States parties to both treaties the same rule applies as in paragraph 3;

(*b*) As between a State party to both treaties and a State party to only one of the treaties, the treaty to which both States are parties governs their mutual rights and obligations.

5. Paragraph 4 is without prejudice to article 41, or to any question of the termination or suspension of the operation of a treaty under article 60 or to any ques-

tion of responsibility which may arise for a State from the conclusion or application of a treaty the provisions of which are incompatible with its obligations towards another State under another treaty.

SECTION 3. INTERPRETATION OF TREATIES

*Article 31.* GENERAL RULE OF INTERPRETATION

1. A treaty shall be interpreted in good faith in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose.

2. The context for the purpose of the interpretation of a treaty shall comprise, in addition to the text, including its preamble and annexes:

(*a*) Any agreement relating to the treaty which was made between all the parties in connexion with the conclusion of the treaty;

(*b*) Any instrument which was made by one or more parties in connexion with the conclusion of the treaty and accepted by the other parties as an instrument related to the treaty.

3. There shall be taken into account, together with the context:

(*a*) Any subsequent agreement between the parties regarding the interpretation of the treaty or the application of its provisions;

(*b*) Any subsequent practice in the application of the treaty which establishes the agreement of the parties regarding its interpretation;

(*c*) Any relevant rules of international law applicable in the relations between the parties.

4. A special meaning shall be given to a term if it is established that the parties so intended.

*Article 32.* SUPPLEMENTARY MEANS OF INTERPRETATION

Recourse may be had to supplementary means of interpretation, including the preparatory work of the treaty and the circumstances of its conclusion, in order to confirm the meaning resulting from the application of article 31, or to determine the meaning when the interpretation according to article 31:

(*a*) Leaves the meaning ambiguous or obscure; or

(*b*) Leads to a result which is manifestly absurd or unreasonable.

*Article 33.* INTERPRETATION OF TREATIES AUTHENTICATED
IN TWO OR MORE LANGUAGES

1. When a treaty has been authenticated in two or more languages, the text is equally authoritative in each language, unless the treaty provides or the parties agree that, in case of divergence, a particular text shall prevail.

2. A version of the treaty in a language other than one of those in which the text was authenticated shall be considered an authentic text only if the treaty so provides or the parties so agree.

3. The terms of the treaty are presumed to have the same meaning in each authentic text.

4. Except where a particular text prevails in accordance with paragraph 1, when a comparison of the authentic texts discloses a difference of meaning which the application of articles 31 and 32 does not remove, the meaning which best reconciles the texts, having regard to the object and purpose of the treaty, shall be adopted.

SECTION 4.   TREATIES AND THIRD STATES

*Article 34.*   GENERAL RULE REGARDING THIRD STATES

A treaty does not create either obligations or rights for a third State without its consent.

*Article 35.*   TREATIES PROVIDING FOR OBLIGATIONS FOR THIRD STATES

An obligation arises for a third State from a provision of a treaty if the parties to the treaty intend the provision to be the means of establishing the obligation and the third State expressly accepts that obligation in writing.

*Article 36.*   TREATIES PROVIDING FOR RIGHTS FOR THIRD STATES

1. A right arises for a third State from a provision of a treaty if the parties to the treaty intend the provision to accord that right either to the third State, or to a group of States to which it belongs, or to all States, and the third State assents thereto. Its assent shall be presumed so long as the contrary is not indicated, unless the treaty otherwise provides.

2. A State exercising a right in accordance with paragraph 1 shall comply with the conditions for its exercise provided for in the treaty or established in conformity with the treaty.

*Article 37.*   REVOCATION OR MODIFICATION OF OBLIGATIONS
OR RIGHTS OF THIRD STATES

1. When an obligation has arisen for a third State in conformity with article 35, the obligation may be revoked or modified only with the consent of the parties to the treaty and of the third State, unless it is established that they had otherwise agreed.

2. When a right has arisen for a third State in conformity with article 36, the right may not be revoked or modified by the parties if it is established that the right was intended not to be revocable or subject to modification without the consent of the third State.

*Article 38.*   RULES IN A TREATY BECOMING BINDING ON THIRD STATES
THROUGH INTERNATIONAL CUSTOM

Nothing in articles 34 to 37 precludes a rule set forth in a treaty from becoming binding upon a third State as a customary rule of international law, recognized as such.

PART IV.   AMENDMENT AND MODIFICATION OF TREATIES

*Article 39.*   GENERAL RULE REGARDING THE AMENDMENT OF TREATIES

A treaty may be amended by agreement between the parties. The rules laid down in Part II apply to such an agreement except in so far as the treaty may otherwise provide.

*Article 40.*   AMENDMENT OF MULTILATERAL TREATIES

1. Unless the treaty otherwise provides, the amendment of multilateral treaties shall be governed by the following paragraphs.

2. Any proposal to amend a multilateral treaty as between all the parties must be notified to all the contracting States, each one of which shall have the right to take part in:

(a) The decision as to the action to be taken in regard to such proposal;
(b) The negotiation and conclusion of any agreement for the amendment of the treaty.

3. Every State entitled to become a party to the treaty shall also be entitled to become a party to the treaty as amended.

4. The amending agreement does not bind any State already a party to the treaty which does not become a party to the amending agreement; article 30, paragraph 4(b), applies in relation to such State.

5. Any State which becomes a party to the treaty after the entry into force of the amending agreement shall, failing an expression of a different intention by that State:
(a) be considered as a party to the treaty as amended; and
(b) be considered as a party to the unamended treaty in relation to any party to the treaty not bound by the amending agreement.

### Article 41. AGREEMENTS TO MODIFY MULTILATERAL TREATIES BETWEEN CERTAIN OF THE PARTIES ONLY

1. Two or more of the parties to a multilateral treaty may conclude an agreement to modify the treaty as between themselves alone if:
(a) The possibility of such a modification is provided for by the treaty; or
(b) The modification in question is not prohibited by the treaty and:
   (i) Does not affect the enjoyment by the other parties of their rights under the treaty or the performance of their obligations;
   (ii) Does not relate to a provision, derogation from which is incompatible with the effective execution of the object and purpose of the treaty as a whole.

2. Unless in a case falling under paragraph 1(a) the treaty otherwise provides, the parties in question shall notify the other parties of their intention to conclude the agreement and of the modification to the treaty for which it provides.

## PART V. INVALIDITY, TERMINATION AND SUSPENSION OF THE OPERATION OF TREATIES

### SECTION 1. GENERAL PROVISIONS

### Article 42. VALIDITY AND CONTINUANCE IN FORCE OF TREATIES

1. The validity of a treaty or of the consent of a State to be bound by a treaty may be impeached only through the application of the present Convention.

2. The termination of a treaty, its denunciation or the withdrawal of a party, may take place only as a result of the application of the provisions of the treaty or of the present Convention. The same rule applies to suspension of the operation of a treaty.

### Article 43. OBLIGATIONS IMPOSED BY INTERNATIONAL LAW INDEPENDENTLY OF A TREATY

The invalidity, termination or denunciation of a treaty, the withdrawal of a party from it, or the suspension of its operation, as a result of the application of the present Convention or of the provisions of the treaty, shall not in any way impair the duty of any State to fulfil any obligation embodied in the treaty to which it would be subject under international law independently of the treaty.

*Article 44.* SEPARABILITY OF TREATY PROVISIONS

1. A right of a party, provided for in a treaty or arising under article 56, to denounce, withdraw from or suspend the operation of the treaty may be exercised only with respect to the whole treaty unless the treaty otherwise provides or the parties otherwise agree.

2. A ground for invalidating, terminating, withdrawing from or suspending the operation of a treaty recognized in the present Convention may be invoked only with respect to the whole treaty except as provided in the following paragraphs or in article 60.

3. If the ground relates solely to particular clauses, it may be invoked only with respect to those clauses where:

(*a*) The said clauses are separable from the remainder of the treaty with regard to their application;

(*b*) It appears from the treaty or is otherwise established that acceptance of those clauses was not an essential basis of the consent of the other party or parties to be bound by the treaty as a whole; and

(*c*) Continued performance of the remainder of the treaty would not be unjust.

4. In cases falling under articles 49 and 50 the State entitled to invoke the fraud or corruption may do so with respect either to the whole treaty or, subject to paragraph 3, to the particular clauses alone.

5. In cases falling under articles 51, 52 and 53, no separation of the provisions of the treaty is permitted.

*Article 45.* LOSS OF A RIGHT TO INVOKE A GROUND FOR INVALIDATING, TERMINATING, WITHDRAWING FROM OR SUSPENDING THE OPERATION OF A TREATY

A State may no longer invoke a ground for invalidating, terminating, withdrawing from or suspending the operation of a treaty under articles 46 to 50 or articles 60 and 62 if, after becoming aware of the facts:

(*a*) It shall have expressly agreed that the treaty is valid or remains in force or continues in operation, as the case may be; or

(*b*) It must by reason of its conduct be considered as having acquiesced in the validity of the treaty or in its maintenance in force or in operation, as the case may be.

SECTION 2. INVALIDITY OF TREATIES

*Article 46.* PROVISIONS OF INTERNAL LAW REGARDING COMPETENCE TO CONCLUDE TREATIES

1. A State may not invoke the fact that its consent to be bound by a treaty has been expressed in violation of a provision of its internal law regarding competence to conclude treaties as invalidating its consent unless that violation was manifest and concerned a rule of its internal law of fundamental importance.

2. A violation is manifest if it would be objectively evident to any State conducting itself in the matter in accordance with normal practice and in good faith.

*Article 47.* SPECIFIC RESTRICTIONS ON AUTHORITY TO EXPRESS THE CONSENT OF A STATE

If the authority of a representative to express the consent of a State to be bound by a particular treaty has been made subject to a specific restriction, his omission to