IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Eiser Infrastructure Limited and Energia Solar Luxembourg S.A.R.L., <br><br> *Petitioners*, <br><br> v. <br><br> Kingdom of Spain, <br><br> *Respondent*. | Civil Action No. 1:18-cv-01686-CKK |

**Expert Declaration of Andrea K. Bjorklund**

# EXHIBIT 19

# DECISIONS WITH RESPECT TO THE ENERGY CHARTER TREATY

## (ANNEX 2 TO THE FINAL ACT OF THE EUROPEAN ENERGY CHARTER CONFERENCE)

The European Energy Charter Conference has adopted the following Decisions:

1. <u>With respect to the Treaty as a whole</u>

   In the event of a conflict between the treaty concerning Spitsbergen of 9 February 1920 (the Svalbard Treaty) and the Energy Charter Treaty, the treaty concerning Spitsbergen shall prevail to the extent of the conflict, without prejudice to the positions of the Contracting Parties in respect of the Svalbard Treaty. In the event of such conflict or a dispute as to whether there is such conflict or as to its extent, Article 16 and Part V of the Energy Charter Treaty shall not apply.

2. <u>With respect to Article 10(7)</u>

   The Russian Federation may require that companies with foreign participation obtain legislative approval for the leasing of federally-owned property, provided that the Russian Federation shall ensure without exception that this process is not applied in a manner which discriminates among Investments of Investors of other Contracting Parties.

3. <u>With respect to Article 14</u> [65]

   (1) The term "freedom of transfer" in Article 14(1) does not preclude a Contracting Party (hereinafter referred to as the "Limiting Party") from applying restrictions on movement of capital by its own Investors, provided that:

   (a) such restrictions shall not impair the rights granted under Article 14(1) to Investors of other Contracting Parties with respect to their Investments;

   (b) such restrictions do not affect Current Transactions; and

---

[65] See Chairman's Statement at Adoption Session on 17 December 1994, p. 157; and Exchange of Letters with the European Communities on Decision n. 3 of the Energy Charter Treaty, p. 160.

(c) the Contracting Party ensures that Investments in its Area of the Investors of all other Contracting Parties are accorded, with respect to transfers, treatment no less favourable than that which it accords to Investments of Investors of any other Contracting Party or of any third state, whichever is the most favourable.

(2) This Decision shall be subject to examination by the Charter Conference five years after entry into force of the Treaty, but not later than the date envisaged in Article 32(3).

(3) No Contracting Party shall be eligible to apply such restrictions unless it is a Contracting Party which is a state that was a constituent part of the former Union of Soviet Socialist Republics, which has notified the provisional Secretariat in writing no later than 1 July 1995 that it elects to be eligible to apply restrictions in accordance with this Decision. [66]

(4) For the avoidance of doubt, nothing in this Decision shall derogate, as concerns Article 16, from the rights hereunder of a Contracting Party, its Investors or their Investments, or from the obligations of a Contracting Party.

(5) For the purposes of this Decision:

"Current Transactions" are current payments connected with the movement of goods, services or persons that are made in accordance with normal international practice, and do not include arrangements which materially constitute a combination of a current payment and a capital transaction, such as deferrals of payments and advances which is meant to circumvent respective legislation of the Limiting Party in the field.

4. <u>With respect to Article 14(2)</u>

Without prejudice to the requirements of Article 14 and its other international obligations, Romania shall endeavour during the transition to full convertibility of its national currency to take appropriate steps to improve the efficiency of its procedures for the transfers of Investment Returns and shall in any case guarantee such transfers in a Freely Convertible Currency without restriction or a delay exceeding six months.  Romania shall ensure that Investments in its Area of the Investors of all other Contracting Parties are accorded, with respect to transfers, treatment no less favourable than that which it accords to Investments of Investors of any other Contracting Party or of any third state, whichever is the most favourable.

---

[66] Editor's note: A notification of the Russian Federation has been received by the provisional Secretariat on 29 June 1995.

5. <u>With respect to Articles 24(4)(a) and 25</u>

   An Investment of an Investor referred to in Article 1(7)(a)(ii), of a Contracting Party which is not party to an EIA or a member of a free-trade area or a customs union, shall be entitled to treatment accorded under such EIA, free-trade area or customs union, provided that the Investment:

   (a) has its registered office, central administration or principal place of business in the Area of a party to that EIA or member of that free-trade area or customs union; or

   (b) in case it only has its registered office in that Area, has an effective and continuous link with the economy of one of the parties to that EIA or member of that free-trade area or customs union.